# Penna. R. R. Co., Appellant, *v.* Kittanning Iron & Steel Manufacturing Co.

*Railroads — Demurrage charges — Liability for — Effect of inability of carrier to remove cars—Shipment frozen during transit.*

1. The mere fact that a carrier was unable to remove its cars on account of its tracks being flooded to such an extent as to entirely suspend its operations for a few days, does not absolve a shipper from liability for demurrage charges during that time on account of cars located on tracks that were not flooded and to which he had access.

2. Under the rule providing that no demurrage shall be collected when shipments are frozen while in transit so as to prevent unloading during a prescribed free time, provided the consignee makes a diligent effort to unload such shipments, a consignee incurs no liability for failure to unload a shipment of ten cars during the free time where it appears that it was the frozen condition of the shipments and not the number of cars that caused the delay.

Argued Oct. 18, 1918. Appeal, No. 48, Oct. T., 1918, by plaintiff, from judgment of C. P. Allegheny Co., April T., 1917, No. 1249, for plaintiff on case stated in the case of the Pennsylvania Railroad Company v. Kittanning Iron & Steel Manufacturing Company. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and FOX, JJ. Affirmed.

Case stated for the opinion of the court. Before EVANS, J.

The plaintiff claimed demurrage charges in the sum of $4,029 under the provisions of the "Car Demurrage Rules."

The plaintiff admitted that it was indebted to the defendant for $2,612 of the amount claimed.

The demurrage rules contain the following provision in regard to high water:

"Rule 8. No demurrage shall be collected under these rules for detention of cars through cases named below.

"When because of high water or snow drifts, it is impossible to get to cars for loading or unloading during a prescribed time."

"When shipments are frozen while in transit so as to prevent unloading during the prescribed time."

The facts appear in the opinions of the lower court, which were as follows:

EVANS, J., April 23, 1917:

This is a case stated, and the subject in controversy was a claim on the part of the railroad company for demurrage on interstate shipments of ore to the defendant company on an interchange track at its works at Kittanning. The defense of the steel company divides the claim of the plaintiff into two classes: First, a claim amounting to $208, which was demurrage charges that accrued March 26, 27 and 28, 1917, and during those three days the tracks of the railroad company were flooded above and below Kittanning to such an extent that the oper-

ations of the railroad were suspended in the immediate vicinity of Kittanning. The interchange tracks, however, were not flooded and there was no difficulty in the steel company getting to and from the interchange track. It is claimed by the defendant that as the railroad company could not during these three days have removed the cars from the interchange track, or in any manner made use of them, they cannot charge demurrage for the failure of the steel company to deliver them to the interchange track. To sustain such a contention would permit a shipper, whenever he was charged with demurrage for the detention of cars over the free time allowed, to set up a defense to any charge that if the cars had been delivered to the railroad company the railroad company was not in a position to make use of them. I do not think that is the law governing the question of the charge for the detention of cars over the free time.

The other class is a claim amounting to $1,209 which accrued during the months of December, 1912, and February and March of 1913, and the defense of the steel company to this claim of demurrage is that the shipments were frozen, and that under the rules of the railroad company the steel company was not liable for demurrage if it used its best endeavor to unload the shipment in the condition in which it was delivered. The rule in regard to frozen ore is as follows:

That no demurrage shall be collected "when shipments are frozen while in transit so as to prevent unloading during the prescribed free time. This exemption shall not include shipments which are tendered to consignee in condition to unload. Under this rule, consignee will be required to make diligent effort to unload such shipments."

It is admitted that the ore was frozen when delivered; that by diligent effort on the part of the steel company it was able to unload ten cars of the ore within the free time of forty-eight hours. But the railroad company claims that, first, by reason of the steel company taking

advantage of what is known as the average agreement it was not entitled to take advantage of the "bunching rule," i. e., the rule which applied to cars that were bunched by the railroad company either at the place of shipment, en route or at the place of consignment. And, second, that the rule above quoted applies to but one car, and that if the steel company had facilities for unloading one car of frozen ore within the free time of forty-eight hours it must pay demurrage on all the cars delivered to it which it failed to unload within that time.

As to the first contention, it was not the bunching of the cars which prevented the steel company from unloading the cars within the free-time limit. If the ore had not been frozen the facilities of the defendant for unloading the cars would have taken care of all the cars delivered, and therefore it was the freezing of the cars and not the bunching of the cars which was the cause of the delay.

As to the second contention of the railroad company, notwithstanding the very curt opinion of the secretary of the Interstate Commerce Commission, I am unable to give the interpretation to that rule contended for by the railroad company. Demurrage shall not be collected "when shipments are frozen while in transit." A shipment is a consignment as delivered by the railroad company, be it one car or one hundred cars, and there is nothing in the averment of facts to justify the contention that the number of cars delivered at any one time during the period for which this demurrage is charged was due to the bunching of shipments either at the place of shipment, en route or at the place of delivery.

I am of the opinion that the whole of the demurrage charge as claimed by the railroad company for the detention of the cars during the period of the flood is a proper charge, and that as to the second class the defendant is entitled to credit for all the cars containing frozen ore which it was unable to unload within the free time

with the facilities which it had, namely, for unloading of the ten cars within the free time.

Let judgment be entered for the plaintiff in accordance with the above opinion.

EVANS, J., September 14, 1917:

In a former opinion filed in this case, after discussing the questions of law involved, I directed that judgment be entered for the plaintiff in accordance with the above opinion. There was nothing in the statement of claim specifically stating what judgment should be entered in case of finding of the court in any particular way upon the questions involved, and, therefore, I assumed that the exact amount which the plaintiff was entitled to recover would be agreed upon by the parties. As I state, there was no specific statement in this stated case. As to whether or not the plaintiff was entitled to recover anything on the second class of cars discussed in the opinion in this case, I found in favor of the defendant's contention that, if it unloaded five cars a day, it could not be charged demurrage on any extra cars which happened to be on the interchange track at that time. But an examination of the schedule attached to the stated case, marked Exhibit "C," giving the date and number of the cars placed on the interchange track during the months of December, February and March, assuming that the plaintiff removed five cars a day, we have, at a dollar a day, just about the plaintiff's claim of $1,209. I, therefore, find that the plaintiff is entitled to recover the $2,612, admitted to be due, and the $208, which accrued on cars during the time the tracks were flooded, and is not entitled to recover anything for the detention of the cars placed during the months of December, February and March, in which the ore was frozen.

The court entered judgment in favor of the plaintiff for the sum of $2,820. The plaintiff appealed.

*Error assigned* was the order of the court.

*Henry Wolf Bikle,* with him *Edwin P. Griffiths, Patterson, Crawford & Miller,* for appellant.—Neither the parties nor the court are at liberty to depart from the facts shown in the case stated, nor to draw inference from facts not stated therein: Lloyd v. Fendick, 231 Pa. 367.

It was the defendant's duty, unless relieved therefrom by agreement with the carrier, to provide itself with the necessary facilities for the prompt unloading and return of the plaintiff's cars. If the number of cars consigned to it was so large as to make this impracticable, it should limit its shipments to its capacity for dealing with them, or pay charges for delay: Baltimore & Ohio R. R. v. Grays Ferry Abattoir Co., 27 Pa. Superior Ct. 511; Darling & Co. v. P., C., C. & St. L. Ry. Co., 37 Interstate Com. Repts. 401; Everingham & Co. v. Halsey, 108 Iowa 709, 713.

Demurrage charges are in the interest of the shipping public and are intended to supply a prompt release of cars and to prevent interference with the general traffic of the carrier. Demurrage rules should be construed so as not to defeat this end: Penna. R. R. v. Waverly Oil Works, 58 Pa. Superior Ct. 154; New York, N. H. & H. R. R. v. Interstate Commerce Commission, 200 U. S. 361; Logan v. Davis, 233 U. S. 613.

*R. L. Ralston,* for appellee.—The purpose of the frozen shipment clause in the demurrage rules is to enable consignees to order deliveries at all seasons of the year without danger of great loss through demurrage charges on frozen shipments.

PER CURIAM, January 4, 1919:

The judgment in this case is affirmed on the opinions of the learned court below, filed April 23 and September 14, 1917, in pursuance of which it was entered.